Reese J.
delivered the opinion of the court.
The only question in this case is, whether the maker of a promissory note is liable to judgment on motion on behalf of an endorser, who was compelled by law to pay the money secured by the note. This is the only point made by the record, for as there was no jury empannelled in the case, the court below could have proceeded only upon the liability shown upon the face of the instrument, and could not properly have heard testimony to prove that the endorsement was for the accommodation of the maker. But take it that there had been a jury, and that proof had been made before them that the endorsement had been for the accommodation of the maker, and that they had so found the fact to be; the question then would be, whether in such case, the endorser could by motion recover against the maker as being his surety, withjn *309 the meaning of the act of 1801, c. 15, § 1, or the act of 1809, c. G9, § 1, 2. And this question we unhesitatingly answer in the negative. A reference to the terms used in the acts referred to, will make it manifest that the legislature did not contemplate endorsers as comprehended in the meaning of the word securities. Indeed neither in technical language, nor in common parlance, have maker and endorser at any time been regarded as sustaining to each other, the relation of principal and surety. So far is the nature of the transaction upon the face of the instrument from constituting that relation, that the first endorser, before the endorsement is the payee of the note, and the creditor of the maker; and after the endorsement, which is no contract between them, the one does not become principal and the other surety, but from the act of endorsement the law merchant implies a promise from the endorser to the en-dorsee, that the maker if duly called on shall pay, or in default thereof, that the endorser if duly notified of his failure shall pay in his stead. The liability by no means arises on the face of the instrument, from a contract ofsecurityship between the maker and endorser. That the legislature has not deemed the endorser as included in the term ‘security,’ is shown by the act of 1801, c. 18, § 1, 2. By the first section of that act, a remedy is given to the surety against his and his principal’s creditor. In case of apprehended insolvency or migration, he may notify him to bring suit, &c. And in the second section, aware that assignors had not been embraced by the terms used in the first section, a distinct provision secures to them a remedy of the same kind.
Again, the third section of the act of 1801, c. 15, prohibits a security from confessing judgment, or suffering it to go by default, if his principal will enter himself defendant, and give collateral security. To apply this to endorsers would subvert the law merchant, and destroy the negotiability of paper.
Again, the second section of the same chapter provides, that ■if the principal be insolvent, one surety may recover a moiety over against his co-surety. But to extend this to endorsers would be absurd, for if the endorsement took place upon consideration, the last endorser, if he paid, should recover, not a moiety, but the entire sum, and if his endorser *310 paid, he would not bo liable to him for a single cent; but if the. endorsement took place for the accommodation of the maker, and without consideration, then it has been well settled in many cases, that in the absence of a special agreement to contribute equally, the first endorser will be liable to the second, and so on for the whole amount. And if there were a special agreement, it is obvious that such agreement would not constitute a proper ground for a summary proceeding by motion.
Finally, the legislature did, (act of 1831, c. 59, § 3,) unadvisedly it is believed, give the remedy by motion, claimed in this case, but in ten months thereafter, (1832, c. 24, § 1,) they hastened to repair the error by repealing the remedy. We are therefore of opinion, that the judgment in this case be reversed.
Judgment reversed.